## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| **MUNEERAH CRAWFORD**, on behalf of themselves and all others similarly situated,<br><br>              Plaintiff,<br>v.<br><br>**HERTZ GLOBAL HOLDINGS, INC.**,<br><br>              Defendant. | Case No. _____<br><br>CLASS ACTION<br><br>JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

Plaintiff  ("Plaintiff") brings this action on behalf of herself, and all others similarly situated against Defendant Hertz Global Holding, Inc. ("Hertz" or "Defendant"). Plaintiff seeks to obtain damages, restitution, and injunctive relief for a class of individuals ("Class" or "Class Members") who are similarly situated and have received notices of the data breach of Hertz. Plaintiff makes the following allegations upon information and belief, except as to her own actions, the investigation of counsel, and the facts that are a matter of public record.

## NATURE OF THE ACTION

1.       Plaintiff brings this nationwide class action against Hertz as a result of a widespread and preventable data breach that compromised the personal and

sensitive information of thousands, if not millions, of individuals across the United States.

2.     This action arises from Hertz's failure to adequately secure and protect personally identifiable information ("PII") and protected health information ("PHI") (together "Private Information") entrusted to it by customers and employees, including names, driver's license numbers, contact details, dates of birth, Social Security numbers, passport information, and Medicare/Medicaid identifiers.

3.     The data breach occurred between October and December 2024 and stemmed from Hertz's use of a vulnerable third-party file transfer system (the "Data Breach") provided by Cleo Communications US, LLC ("Cleo"). The breach was reportedly exploited by the Clop ransomware group and exposed massive volumes of sensitive information.

4.     Despite knowing the severity of the breach, Hertz delayed public disclosure and failed to provide timely notice to affected individuals, thereby exacerbating the harm.

5.     Hertz's negligence in failing to implement adequate cybersecurity measures, combined with its failure to act swiftly to notify those affected, constitutes a clear violation of consumer protection laws, privacy laws, and common law duties.

6.     As a consequence of the Data Breach and ransomware attack Plaintiff and Class Members are at risk of having their identities stolen, or their PII and PHI.

7.      Plaintiff and Class Members now face ongoing and substantial risks of identity theft, fraud, and other misuse of their private information. They seek damages and equitable relief to remedy the harms caused by Hertz's conduct.

8.      Plaintiff brings this class action lawsuit on behalf of those similarly situated to address Defendant's inadequate safeguarding of Class Members' PII and PHI that they collected and maintained, and for failing to provide timely and adequate notice to Plaintiff and other Class Members that their information had been subject to the unauthorized access of an unknown third party and precisely what specific type of information was accessed.

9.      Defendant maintained the PII and PHI in a reckless manner. In particular, the Private Information was maintained by Defendant on Hertz's computer network in a condition vulnerable to cyberattacks. The mechanism of the cyberattack and potential for improper disclosure of Plaintiff's and Class Members' Private Information was a known risk to Defendant. Thus, Defendant was on notice that failing to take steps necessary to secure the Private Information from those risks left that property in a dangerous condition.

10.      Defendant disregarded the privacy and property rights of Plaintiff and Class Members, by inter alia, *inter alia*, intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure its data systems were protected against unauthorized intrusions; failing to disclose that they did not have adequately robust computer systems and security practices to safeguard Class Members' Private Information; failing to take standard and reasonably

available steps to prevent the Data Breach; and failing to provide Plaintiff and Class Members prompt and accurate and complete notice of the Data Breach.

11.    Plaintiff's and Class Members' identities are now at substantial and imminent risk because of Defendant's negligent conduct since the Private Information that Defendant collected and maintained (including Social Security numbers) is now in the hands of data thieves.

12.    With the Private Information accessed in the Data Breach, data thieves can commit a variety of crimes including, *e.g.*, opening new financial accounts in Class Members' names, taking out loans in Class Members' names, using Class Members' information to obtain government benefits, filing fraudulent tax returns using Class Members' information, filing false medical claims using Class Members' information, obtaining driver's licenses in Class Members' names but with another person's photograph, and giving false information to police during an arrest.

13.    As a result of the Data Breach, Plaintiff and Class Members have been exposed to a heightened and imminent risk of fraud and identity theft. Plaintiff and Class Members must now and in the future closely monitor their financial accounts to guard against identity theft.

14.    Plaintiff and Class Members may also incur out of pocket costs for, *e.g.*, purchasing credit monitoring services, credit freezes, credit reports, or other protective measures to deter and detect identity theft, as well as sustaining damage by failing to timely receive their government assistance.

15.     Through this Complaint, Plaintiff seeks to remedy these harms on behalf of herself and all similarly situated individuals whose Private Information was accessed during the Data Breach.

16.     Accordingly, Plaintiff brings this action against Defendant for negligence, breach of implied contract, unjust enrichment, California consumer statutes and declaratory relief, seeking redress for Hertz's unlawful conduct.

17.     Plaintiff seeks remedies including, but not limited to, compensatory damages, reimbursement of out-of-pocket costs, and injunctive relief including improvements to Defendant's data security systems, future annual audits, and adequate, long term credit monitoring services funded by Defendant, and declaratory relief.

## PARTIES

18.     Plaintiff Muneerah Crawford ("Plaintiff") is a resident of  Foster City, California.   Plaintiff has rented cars from Hertz, Thrifty and Dollar at least three times over the last two years and was required to enter into a rental agreement in which she provided her PII in order to rent these vehicles from Defendant.

19.     Plaintiff received and email and a data breach notification letter in the mail on April 17, 2025 from Defendant indicating to her that her PII had been subject to the Data Breach.

20.     Since the Data Breach, Plaintiff has experienced an increase in spam calls as well as spam emails and spam text messages.

21.     Defendant Hertz Global Holdings, Inc. is a Delaware corporation with its principal place of business located at 8501 Williams Road, Estero, Florida 33928. Hertz operates the Hertz, Dollar, and Thrifty rental brands.

## JURISDICTION AND VENUE

22.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class is a citizen of a state different from Defendant.

23.     The Court has general personal jurisdiction over Defendant because, personally or through its agents, Defendant operates, conducts, engages in, or carries on a business or business venture in this State; it maintains its principal place of business in Estero, Florida and conducts substantial business in Florida.

24.     Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District. Defendant's corporate headquarters is located in this District.

## FACTUAL ALLEGATIONS

25.     In its formal notice to affected individuals, Hertz stated that The Hertz Corporation, on behalf of Hertz, Dollar, and Thrifty brands, issued a communication to notify individuals about an event involving Cleo, a vendor of Hertz.

26.     According to the notice, Cleo provides a file transfer platform used by Hertz for limited purposes. On February 10, 2025, Hertz confirmed that

unauthorized parties had acquired Hertz data by exploiting zero-day vulnerabilities in Cleo's software in both October 2024 and December 2024. While Cleo's software platform was the point of initial compromise, the breach resulted in unauthorized acquisition of data maintained on or transmitted through Hertz-controlled systems.

27.    The public notice further stated that the event involved not only the Hertz brand, but also extended to individuals who conducted business through the Dollar and Thrifty brands, which share infrastructure and data systems operated by Hertz.

28.    Despite this internal acknowledgment, Hertz failed to provide adequate and timely individual notice to many of the consumers affected by the breach, delaying transparency until after personal data had been exposed online.

29.    Cleo is a third-party technology provider specializing in secure data integration and file transfer solutions. Cleo provides services to a range of enterprise clients, including those in the automotive, logistics, and financial sectors.

30.    As a vendor entrusted with transferring files containing highly sensitive personal and financial data, Cleo had a duty—both contractual and statutory—to implement robust cybersecurity protections consistent with industry standards.

31.    On information and belief, Cleo failed to adequately patch known vulnerabilities and safeguard the data systems under its control. This failure enabled malicious actors to infiltrate the platform and exfiltrate files containing customer data.

32.    Hertz's reliance on Cleo's platform without ensuring effective security controls, regular vulnerability assessments, or independent audits constitutes a failure of vendor oversight and a breach of Hertz's duty to maintain a secure data environment.

33.    Hertz collects and stores vast quantities of consumer PII and PHI in the course of its vehicle rental operations. This information includes names, addresses, emails, phone numbers, driver's license numbers, credit and debit card data, Social Security numbers, passport numbers, and in certain cases, medical information related to insurance claims and workers' compensation.

34.    Customers are required to submit this information to Hertz and its affiliated brands, Dollar and Thrifty, as a condition of renting vehicles. Hertz represents that it uses this information only for legitimate business purposes and that it takes reasonable precautions to protect it.

35.    These rental brands operate using a shared data infrastructure maintained by Hertz, meaning the same systems and security practices governed customer data regardless of whether the rental was made through Hertz, Dollar, or Thrifty.

36.    Hertz maintains a publicly available privacy policy in which it assures customers that it implements reasonable physical, technical, and administrative safeguards to protect personal data from unauthorized access, use, or disclosure.

37.    However, Hertz failed to implement the very measures it represented in its privacy policies. The systems in place were outdated, lacked end-to-end

encryption, and were not monitored effectively, leaving critical data vulnerable to cyberattack.

38.    Industry analysts and cybersecurity professionals have noted that Hertz's digital infrastructure had known weaknesses. These vulnerabilities included the use of third-party file transfer solutions without adequate oversight or patch management.

39.    In late 2024, cybercriminals exploited vulnerabilities in Cleo Communications' file transfer software, which Hertz used to manage sensitive files across all its brands.

40.    The breach went undetected for several weeks and compromised data from October through December 2024. The Clop ransomware gang later published some of the stolen data on the dark web.

41.    Individuals who rented vehicles from Dollar and Thrifty were also affected, as their personal information was stored on the same compromised systems.

42.    It was not until February 2025 that Hertz confirmed the breach publicly, months after the data was stolen and exposed. Even then, it failed to provide timely and comprehensive notice to all affected consumers.

43.    Hertz disclosed that the types of personal information exposed in the breach included, but were not limited to:

- Full names
- Addresses
- Email addresses
- Phone numbers

- Dates of birth
- Driver's license numbers
- Social Security numbers (for certain individuals)
- Passport numbers
- Credit and debit card numbers
- Medicare/Medicaid identifiers
- Insurance claim information
- Workers' compensation-related health data

44.    In the ordinary course of its business, Hertz collects Social Security numbers and PHI from customers and employees in a variety of contexts, including but not limited to insurance claims, accident reports, government rentals, long-term rentals, and when processing payments through specific programs involving healthcare-related incidents or reimbursement requests.

45.    For example, when customers are involved in automobile accidents while using Hertz vehicles, the company often requests medical documentation and insurance information to process liability claims. This documentation may include medical diagnoses, billing records, Medicare or Medicaid identification numbers, and workers' compensation filings.

46.    Hertz also requires Social Security numbers in situations involving identity verification for government contracts, extended rentals, or where required under federal law, such as tax reporting or employment-related activities for corporate clients.

47.    Accordingly, Hertz maintained and stored a significant volume of sensitive health and identity data that should have been afforded the highest degree

of protection. Its failure to do so directly contributed to the scope and impact of the breach.

48.     Hertz's failure to secure sensitive information and notify affected individuals in a timely fashion violated industry standards, FTC guidelines, and its own privacy policy.

49.     The exposure of PII and PHI places individuals at imminent risk of identity theft, credit fraud, medical fraud, and other financial harms.

50.     Plaintiff and Class Members have already suffered ascertainable losses, including the value of their private information, time spent monitoring accounts, and emotional distress from loss of privacy and fear of fraud.

51.     The breach was entirely preventable. Reasonable cybersecurity protocols, including timely software patching, encryption, and network monitoring, could have averted or mitigated the attack.

**Hertz's Privacy Policy**

52.     Hertz publishes a privacy policy on its website promising to protect customers' personal data. It states that Hertz uses "appropriate technical and organizational measures" to safeguard personal information from loss, misuse, and unauthorized access.[1]

53.     In the course of collecting Private Information from consumers, including Plaintiff and Class Members, Hertz promised to provide confidentiality and

---

[1] https://www.hertz.com/rentacar/privacypolicy (last accessed April 18, 2025).

adequate security for Private Information through its applicable Privacy Policy and in compliance with statutory privacy requirements applicable to its industry. Hertz is aware of and had obligations created by HIPAA, FTCA, contract, industry standards, state law and common law to keep Plaintiff' and Class Members' Private Information confidential and to protect it from unauthorized access and disclosure.

54.     Plaintiff and the Class Members, as consumers, relied on the promises and duties of Hertz to keep their sensitive PII confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

55.     Consumers, in general, demand that businesses that require highly sensitive PII will provide security to safeguard their PII, especially when Social Security numbers and private health information are involved.

56.     Hertz had a duty to adopt reasonable measures to protect Plaintiff' and Class Members' PII and PHI from unauthorized disclosure to third parties which it failed to do despite being on notice of material issues regarding its security systems.

57.     Because of this targeted, intentional cyberattack, data thieves were able to gain access to and obtain data from Hertz that included the Private Information of Plaintiff and Class Members.

58.     Upon information and belief, the Private Information stored on Hertz's network was not encrypted.

59.     Plaintiff's Private Information was accessed and stolen in the Data Breach. Plaintiff reasonably believed her stolen Private Information is currently

available for sale on the Dark Web because that is the *modus operandi* of cybercriminals who target businesses that collect highly sensitive Private Information.

60.    As a result of the Data Breach, Hertz now encourages Class Members to take steps to mitigate identity theft, a tacit admission of the imminent risk of identity theft faced by Plaintiff and Class Members.

61.    Hertz offer to Plaintiff and Class Members to enroll in their offer for Kroll credit monitoring and identity theft protection for two years is an acknowledgment that the impacted consumers are subject to a substantial and imminent threat of fraud and identity theft.

62.    Hertz had obligations created by contract, industry standards, and common law to keep Plaintiff's and Class Members' Private Information confidential and to protect it from unauthorized access and disclosure.

63.    Plaintiff  suffered actual injury from having Private Information exposed as a result of the Data Breach including, but not limited to  (a) damages to and diminution in the value of Private Information—a form of intangible property that Plaintiff entrusted to Hertz; (b) loss of privacy; and (c) imminent and impending injury arising from the increased risk of fraud and identity theft.

64.    As a result of the Data Breach, Plaintiff will continue to be at heightened risk for  fraud and the attendant damages, for years to come.

**Hertz Had a Duty to Secure Class Members Private Information**

65.    At all relevant times, Hertz had a duty to Plaintiff and Class Members to properly secure their PII and PHI, encrypt and maintain such information using industry standard methods, train its employees, utilize available technology to defend its systems from invasion, act reasonably to prevent foreseeable harm to Plaintiff and Class Members, and to promptly notify Plaintiff and Class Members when Hertz became aware that their PII and PHI was compromised.

66.    Defendant had the resources necessary to prevent the Data Breach but neglected to adequately invest in security measures, despite its obligation to protect such information. Accordingly, Defendant breached its common law, statutory, and other duties owed to Plaintiff and Class Members.

67.    Security standards commonly accepted among businesses that store PII using the internet include, without limitation:

   a.  Maintaining a secure firewall configuration;

   b.  Maintaining appropriate design, systems, and controls to limit user access to certain information as necessary;

   c.  Monitoring for suspicious or irregular traffic to servers;

   d.  Monitoring for suspicious credentials used to access servers;

   e.  Monitoring for suspicious or irregular activity by known users;

   f.  Monitoring for suspicious or unknown users;

   g.  Monitoring for suspicious or irregular server requests;

   h.  Monitoring for server requests for PII;

   i.  Monitoring for server requests from VPNs; and

j.  Monitoring for server requests from Tor exit nodes.

68.  Because of this targeted, intentional cyberattack, data thieves were able to gain access to and obtain data from Hertz that included the Private Information of Plaintiff and Class Members.

69.  Hertz admits that the files exfiltrated from Hertz contained at least the following information of Plaintiff and Class Members: names, addresses, dates of birth, banking information and Social Security numbers.

70.  Upon information and belief, the Private Information stored on Hertz's network was not encrypted.

71.  Plaintiff's Private Information was accessed and stolen in the Data Breach. Plaintiff reasonably believed her stolen Private Information is currently available for sale on the Dark Web because that is the *modus operandi* of cybercriminals who target businesses that collect highly sensitive Private Information.

72.  As a result of the Data Breach, Hertz now encourages Class Members to take steps to mitigate identity theft, a tacit admission of the imminent risk of identity theft faced by Plaintiff and Class Members.

73.  Hertz is encouraging Plaintiff and Class Members to enroll in credit monitoring and identity theft restoration services is an acknowledgment that the impacted consumers are subject to a substantial and imminent threat of fraud and identity theft.

74.     Hertz had obligations created by contract, industry standards, and common law to keep Plaintiff' and Class Members' Private Information confidential and to protect it from unauthorized access and disclosure.

75.     Hertz could have prevented this Data Breach by, among other things, properly encrypting or otherwise protecting their equipment and computer files containing PII and PHI.

### Defendant Acquires, Collects, and Stores Plaintiff' and Class Members' PII and PHI

76.     Hertz acquires, collects, and stores a massive amount of PII and PHI. By obtaining, collecting, and using Plaintiff's and Class Members' PII and PHI for its own financial gain and business purposes, Defendant assumed legal and equitable duties and knew that it was responsible for protecting Plaintiff's and Class Members' PII and PHI from disclosure.

77.     Plaintiff and the Class Members have taken reasonable steps to maintain the confidentiality of their PII and PHI.

### The Data Breach Was a Foreseeable Risk of which Defendant Was on Notice

78.     Prior to the breach involving Hertz, Cleo had experienced documented cybersecurity vulnerabilities in its file transfer software, which were publicly disclosed and widely reported in the cybersecurity community.

79.     In particular, Cleo's file transfer software was associated with two critical vulnerabilities—CVE-2024-50623 and CVE-2024-55956—that were disclosed

in October and December 2024, respectively. These vulnerabilities allowed unauthorized parties to upload and download files and execute commands remotely, including on platforms used by enterprise customers like Hertz.

80.     These vulnerabilities were actively exploited by the Clop ransomware group in the same timeframe as the attack on Hertz's systems. Cybersecurity bulletins and software advisories publicly documented these threats, and Cleo had issued patches intended to address them.

81.     These widely known vulnerabilities placed Hertz on clear and heightened notice regarding the risks of entrusting sensitive personal and health-related data to Cleo's platform. Public cybersecurity advisories, CVE entries, and software security briefings provided ample warning of the vulnerabilities being actively exploited by threat actors.

82.     As a large enterprise with access to vendor risk assessments and third-party security auditing tools, Hertz had the ability and obligation to identify these known risks and to act on them.

83.     Hertz's failure to conduct sufficient due diligence, impose stricter vendor compliance obligations, or monitor Cleo's patching and threat mitigation practices represents a breakdown in basic data governance.

84.     As a result, Hertz not only failed to prevent the breach, but did so despite red flags that should have prompted enhanced protections or vendor re-evaluation well before the breach occurred.

85.    Individuals place a high value not only on their PII, but also on the privacy of that data. Identity theft causes severe negative consequences to its victims, as well as severe distress and hours of lost time trying to fight against the impact of identity theft.

86.    A data breach increases the risk of becoming a victim of identity theft. Victims of identity theft can suffer from both direct and indirect financial losses. According to a research study published by the Department of Justice, "[a] direct financial loss is the monetary amount the offender obtained from misusing the victim's account or personal information, including the estimated value of goods, services, or cash obtained. It includes both out-of-pocket loss and any losses that were reimbursed to the victim. An indirect loss includes any other monetary cost caused by the identity theft, such as legal fees, bounced checks, and other miscellaneous expenses that are not reimbursed (e.g., postage, phone calls, or notary fees). All indirect losses are included in the calculation of out-of-pocket loss."[2]

87.    Individuals, like Plaintiff and Class members, are particularly concerned with protecting the privacy of their Social Security numbers, which are the key to stealing any person's identity and is likened to accessing your DNA for hacker's purposes.

88.    Data Breach victims suffer long-term consequences when their Social Security numbers are taken and used by hackers. Even if they know their Social

---

[2] "Victims of Identity Theft, 2018," U.S. Department of Justice (April 2021, NCJ 256085) available at: https://bjs.ojp.gov/content/pub/pdf/vit18.pdf (last accessed Dec. 5, 2024).

Security numbers are being misused, Plaintiff and Class Members cannot obtain new numbers unless they become a victim of social security number misuse.

89.    The Social Security Administration has warned that "a new number probably won't solve all your problems. This is because other governmental agencies (such as the IRS and state motor vehicle agencies) and private businesses (such as banks and credit reporting companies) will have records under your old number. Along with other personal information, credit reporting companies use the number to identify your credit record. So using a new number won't guarantee you a fresh start. This is especially true if your other personal information, such address, remains the same."[3] In 2021, there were a record 1,862 data breaches, surpassing both 2020's total of 1,108 and the previous record of 1,506 set in 2017.[4]

90.    Additionally in 2021, there was a 15.1% increase in cyberattacks and data breaches since 2020. Over the next two years, in a poll done on security executives, they have predicted an increase in attacks from "social engineering and ransomware" as nation-states and cybercriminals grow more sophisticated. Unfortunately, these preventable causes will largely come from "misconfigurations, human error, poor maintenance, and unknown assets."[5]

---

[3] https://www.ssa.gov/pubs/EN-05-10064.pdf (last accessed Dec. 5, 2024).

[4] https://www.cnet.com/tech/services-and-software/record-number-of-data-breaches-reportedin-2021-new-report-says/ (last accessed Dec. 5, 2024).

[5] https://www.forbes.com/sites/chuckbrooks/2022/06/03/alarming-cyber-statistics-for-mid-year2022-that-you-need-to-know/?sh=176bb6887864 (last accessed Dec. 5, 2024).

91.    In light of high profile data breaches at other industry leading companies, including Microsoft (250 million records, December 2019), Wattpad (268 million records, June 2020), Facebook (267 million users, April 2020), Estee Lauder (440 million records, January 2020), Whisper (900 million records, March 2020), and Advanced Info Service (8.3 billion records, May 2020), Defendant knew or should have known that its computer network would be targeted by cybercriminals.

92.    Cyberattacks have become so notorious that the FBI and U.S. Secret Service have issued a warning to potential targets so they are aware of, and prepared for, and hopefully can ward off a cyberattack.

93.    According to an FBI publication, "[r]ansomware is a type of malicious software, or malware, that prevents you from accessing your computer files, systems, or networks and demands you pay a ransom for their return. Ransomware attacks can cause costly disruptions to and the loss of critical information and data." [6] This publication also explains that "[t]he FBI does not support paying a ransom in response to a ransomware attack. Paying a ransom doesn't guarantee you or your organization will get any data back. It also encourages perpetrators to target more victims and offers an incentive for others to get involved in this type of illegal activity."[7]

---

[6] https://www.fbi.gov/how-we-can-help-you/safety-resources/scams-and-safety/common-scamsand-crimes/ransomware (last accessed Dec. 27, 2024).
[7] *Id.*

94.    Despite the prevalence of public announcements of data breach and data security compromises, and despite its own acknowledgments of data security compromises, and despite its own acknowledgment of its duties to keep PII private and secure, Hertz failed to take appropriate steps to protect the PII of Plaintiff and the proposed Class from being compromised.

### At All Relevant Times Defendant Had a Duty to Plaintiff and Class Members to Properly Secure their Private Information

95.    At all relevant times, Hertz had a duty to Plaintiff and Class Members to properly secure their PII and PHI, encrypt and maintain such information using industry standard methods, train its employees, utilize available technology to defend its systems from invasion, act reasonably to prevent foreseeable harm to Plaintiff and Class Members, and to promptly notify Plaintiff and Class Members when Hertz became aware that their PII and PHI was compromised.

96.    Defendant had the resources necessary to prevent the Data Breach but neglected to adequately invest in security measures, and conduct proper due diligence in their use of Cleo, despite its obligation to protect such information. Accordingly, Defendant breached its common law, statutory, and other duties owed to Plaintiff and Class Members.

97.    Security standards commonly accepted among businesses that store PII and PHI using the internet include, without limitation:

a.    Maintaining a secure firewall configuration;

b.  Maintaining appropriate design, systems, and controls to limit user access to certain information as necessary;

c.  Monitoring for suspicious or irregular traffic to servers;

d.  Monitoring for suspicious credentials used to access servers;

e.  Monitoring for suspicious or irregular activity by known users;

f.  Monitoring for suspicious or unknown users;

g.  Monitoring for suspicious or irregular server requests;

h.  Monitoring for server requests for PII;

i.  Monitoring for server requests from VPNs; and

j.  Monitoring for server requests from Tor exit nodes.

98.     The Federal Trade Commission ("FTC") defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[8] The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."[9]

99.     The ramifications of Defendant's failure to keep consumers' PII secure are long lasting and severe. Once PII is stolen, particularly Social Security and

---

[8] 17 C.F.R. § 248.201 (2013).

[9] *Id.*

driver's license numbers, fraudulent use of that information and damage to victims including Plaintiff and the Class may continue for years.

**The Value of Private Information and the Effects of Unauthorized Disclosure**

100.    At all relevant times, Defendant was well aware that the Private Information it collects from Plaintiff and Class Members is highly sensitive and of significant value to those who would use it for wrongful purposes.

101.    Private Information is a valuable commodity to identity thieves. As the FTC recognizes, identity thieves can use this information to commit an array of crimes including identify theft, and medical and financial fraud.[10] Indeed, a robust "cyber black market" exists in which criminals openly post stolen PII and PHI on multiple underground Internet websites, commonly referred to as the dark web.

102.    While credit card information and associated PII can sell for as little as $1-$2 on the black market, PHI can sell for as much as $363 according to the Infosec Institute.[11]

103.    The ramifications of Hertz's failure to keep Plaintiff and Class member's Private Information secure are long lasting and severe. Once Private Information is stolen, fraudulent use of that information and damage to victims may continue for years. Fraudulent activity might not show up for six to 12 months or even longer.

---

[10] Federal Trade Commission, *Warning Signs of Identity Theft, available at:* https://www.consumer.ftc.gov/articles/0271-warning-signs-identity-theft (last accessed July 20, 2022).

[11] Center for Internet Security, *Data Breaches: In the Healthcare Sector, available at:* https://www.cisecurity.org/blog/data-breaches-in-the-healthcare-sector/ (last accessed July 20, 2022).

104.    Further, criminals often trade stolen Private Information on the "cyber black-market" for years following a breach. Cybercriminals can post stolen Private Information on the internet, thereby making such information publicly available.

105.    Approximately 21% of victims do not realize their identity has been compromised until more than two years after it has happened. [12] This gives thieves ample time to seek multiple treatments under the victim's name. Forty percent of consumers found out they were a victim of medical identity theft only when they received collection letters from creditors for expenses that were incurred in their names.[13]

106.    Hertz is offering a limited time offer for identity theft monitoring and identity theft protection.  Its limitation is inadequate when Class members are likely to face many years of identity theft.  Moreover, this type of inadequate protection place the burden to monitor and report suspicious activity on the Plaintiff and Class members rather than Defendant.

107.    These services are wholly inadequate  to provide Plaintiff and Class members with  sufficient compensation and protection for the multiple years of ongoing theft identity and other damage that they will face as a consequence of the Data Breach.

---

[12] *See* Medical ID Theft Checklist, *available at:* https://www.identityforce.com/blog/medical-id-theft-checklist-2 (last accessed July 20, 2022).
[13] Experian, *The Potential Damages and Consequences of Medical Identify Theft and Healthcare Data Breaches* ("*Potential Damages*"), *available at:* https://www.experian.com/assets/data-breach/white-papers/consequences-medical-id-theft-healthcare.pdf (last accesses July 20, 2022).

108.    The injuries to Plaintiff and Class members were directly and proximately caused by Hertz's failure to maintain or implement adequate data security measures for Plaintiff and Class members.

### Hertz Failed to Comply with FTC Guidelines

109.    Hertz was also prohibited by the Federal Trade Commission Act ("FTC Act") (15 U.S.C. §45) from engaging in "unfair or deceptive acts or practices in or affecting commerce." The FTC has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act. *See, e.g., FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

110.    The FTC has promulgated numerous guides for businesses that highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.[14]

111.    In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established cybersecurity guidelines for businesses.[15] The guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt

---

[14] Federal Trade Commission, *Start With Security: A Guide for Business*, *available at:* https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf (last accessed July 20, 2022).

[15] Federal Trade Commission, *Protecting Personal Information: A Guide for Business*, available at: https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf (last accessed July 20, 2022).

information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.

112.    The FTC further recommends that companies not maintain Private Information longer than is needed for authorization of a transaction; limit access to private data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.[16]

113.    The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

114.    Regulatory guidance and precedent have established that companies are responsible for safeguarding personal data entrusted to them, even when it is handled or processed by third-party vendors. The FTC has repeatedly held data controllers accountable for security failures involving outsourced services, emphasizing that liability cannot be outsourced.

---

[16] FTC, *Start With Security*, *supra* note 16.

115.    The FTC has explicitly warned that businesses must perform due diligence on service providers, require contractual data protection obligations, and continuously monitor vendor compliance. These obligations are fundamental to fulfilling a company's duty to implement reasonable security practices.

> Despite this guidance, Hertz failed to ensure Cleo was maintaining adequate security protocols, failed to detect the ongoing threat activity during the attack period, and failed to act in a timely manner when serious vulnerabilities in Cleo's platform were being actively exploited.**Concrete Injuries are Caused by Defendant's Inadequate Security**

116.    Plaintiff and Class Members reasonably expected that Defendant would provide adequate security protections for their PII, and Class Members provided Defendant with sensitive personal information, including their names, addresses, and Social Security numbers.

117.    Defendant's poor data security deprived Plaintiff and Class Members of the benefit of their bargain. Plaintiff and other individuals whose PII were entrusted with Defendant understood and expected that, as part of that relationship, they would receive data security, when in fact Defendant did not provide the expected data security. Accordingly, Plaintiff and Class Members received data security that was of a lesser value than what they reasonably expected.  As such, Plaintiff and the Class Members suffered pecuniary injury.

118.    Cybercriminals intentionally attack and exfiltrate PII to exploit it. Thus, Class Members are now, and for the rest of their lives will be, at a heightened and substantial risk of identity theft.  Plaintiff have also incurred (and will continue to

incur) damages in the form of, inter alia, loss of privacy and costs of engaging adequate credit monitoring and identity theft protection services.

119.    The cybercriminals who obtained the Class Members' PII may exploit the information they obtained by selling the data in so-called "dark markets" or on the "dark web."  Having obtained these names, addresses, Social Security numbers, and other PII, cybercriminals can pair the data with other available information to commit a broad range of fraud in a Class Member's name, including but not limited to:

- obtaining employment;

- obtaining a loan;

- applying for credit cards or spending money;

- filing false tax returns;

- stealing Social Security and other government benefits; and

- applying for a driver's license, birth certificate, or other public document.

120.    In addition, if a Class Member's Social Security number is used to create false identification for someone who commits a crime, the Class Member may become entangled in the criminal justice system, impairing the person's ability to gain employment or obtain a loan.

121.    As a direct and/or proximate result of Defendant's wrongful actions and/or inaction and the resulting Data Breach, Plaintiff and the other Class Members

have been deprived of the value of their PII, for which there is a well-established national and international market.

122.    Furthermore, PII has a long shelf-life because it contains different forms of personal information, it can be used in more ways than one, and it typically takes time for fraudulent misuse of this information to be detected.

123.    Accordingly, Defendant's wrongful actions and/or inaction and the resulting Data Breach have also placed Plaintiff and the other Class Members at an imminent, immediate, and continuing increased risk of identity theft and identity fraud.

124.    As a result of the Data Breach, Plaintiff and Class Members have already suffered injuries, and each are at risk of a substantial and imminent risk of future identity theft.

## CLASS ALLEGATIONS

125.    Plaintiff brings this class action on behalf of themselves and on behalf of all others similarly situated pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure.

126.    The  Class that Plaintiff seeks to represent is defined as follows:

**Nationwide Class:**
**All individuals residing in the United States whose Private Information was compromised in the Data Breach.**

**California Subclass:**
**All individuals residing in California whose Private Information was compromised in the Data Breach.**

127.    Excluded from the Class are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers, and directors, current or former employees, and subcontractor used by Defendant in performing its duties; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; any and all federal, state or local governments, including but not limited to their departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

128.    Plaintiff reserve the right to modify or amend the definition of the proposed Class  before the Court determines whether certification is appropriate.

129.    Numerosity, Fed R. Civ. P. 23(a)(1): The Class is so numerous that joinder of all members is impracticable. The Class includes thousands of individuals whose Private Information may have been improperly accessed in the Data Breach.

130.    Commonality, Fed. R. Civ. P. 23(a)(2) and (b)(3): Questions of law and fact common to the Class predominate over any questions affecting only individual Class Members. These include:

> a. Whether and when Defendant actually learned of the Data Breach and whether its response was adequate;
>
> b. Whether Defendant owed a duty to the Class  to exercise due care in collecting, storing, safeguarding and/or obtaining their Private Information;

c.  Whether Defendant breached that duty;

d.  Whether Defendant implemented and maintained reasonable security procedures and practices appropriate to the nature of storing Plaintiff and Class Members' Private Information;

e.  Whether Defendant acted negligently in connection with the monitoring and/or protecting of Plaintiff's and Class Members' PII/PHI;

f.  Whether Defendant knew or should have known that it did not employ reasonable measures to keep Plaintiff's and Class Members' PII/PHI secure and prevent loss or misuse of that Private Information;

g.  Whether Defendant adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

h.  Whether Defendant caused Plaintiff's and Class Members' damages;

i.  Whether Defendant violated the law by failing to promptly notify Class Members that their Private Information had been compromised;

j.  Whether Plaintiff and the other Class Members are entitled to actual damages, credit monitoring, and other monetary relief;

k.  Whether Defendant violated common law and statutory claims alleged herein

131.    Typicality, Fed. R. Civ. P. 23(a)(3): Plaintiff' claims are typical of those of other Class Members , because all had their Private Information compromised as a result of the Data Breach, due to Defendant's misfeasance.

132.   <u>Policies Generally Applicable to the Class</u>: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Class as a whole. Defendant's policies challenged herein apply to and affect Class Members uniformly and Plaintiff' challenge of these policies hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

133.   <u>Adequacy</u>, Fed. R. Civ. P. 23(a)(4): Plaintiff will fairly and adequately represent and protect the interests of the Class Members in that she has no disabling conflicts of interest that would be antagonistic to those of the other Members of the Class. Plaintiff seeks no relief that is antagonistic or adverse to the Members of the Class and the infringement of the rights and the damages they have suffered are typical of other Class Members. Plaintiff has retained counsel experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously.

134.   <u>Superiority and Manageability</u>, Fed. R. Civ. P. 23(b)(3): The class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence,

effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain class members, who could not individually afford to litigate a complex claim against large corporations, like Defendant. Further, even for those class members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

135.   The nature of this action and the nature of laws available to Plaintiff and the Class   make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiff and the Class  for the wrongs alleged because Defendant would necessarily gain an unconscionable advantage since Defendant would be able to exploit and overwhelm the limited resources of each individual Class  Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiff were exposed is similar to that experienced by the Class and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

136.   The litigation of the claims brought herein is manageable. Defendant's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class   Members demonstrates that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

137.    Adequate notice can be given to Class Members directly using information maintained in Defendant's records.

138.    Unless a Class-wide injunction is issued, Plaintiff and Class Members remain at risk that Defendant will continue to fail to properly secure the Private Information of Plaintiff and Class and Members resulting in another data breach, continue to refuse to provide proper notification to Class Members regarding the Data Breach, and continue to act unlawfully as set forth in this Complaint.

139.    Defendant has acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class and as a whole is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

140.    Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to the following:

a. Whether Defendant owed a legal duty to Plaintiff and Class and Members to exercise due care in collecting, storing, using, and safeguarding their Private Information;

b. Whether Defendant breached a legal duty to Plaintiff and Class and Members to exercise due care in collecting, storing, using, and safeguarding their Private Information;

c. Whether Defendant failed to comply with their own policies and applicable

laws, regulations, and industry standards relating to data security;

d.  Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach; and

e.  Whether Class Members are entitled to actual damages, credit monitoring or other injunctive relief, and/or punitive damages as a result of Defendant's wrongful conduct.

## CAUSES OF ACTION

### Count I
### NEGLIGENCE
### (On behalf of Plaintiff, the Nationwide Class and the California Subclass)

130.    Plaintiff re-alleges and incorporates by reference the paragraphs above as if fully set forth herein.

131.    Defendant gathered and stored the Private Information of Plaintiff and Class Members as part of the regular course of its business operations. Plaintiff and Class Members were entirely dependent on Defendant to use reasonable measures to safeguard their Private Information and were vulnerable to the foreseeable harm described herein should Defendant fail to safeguard their Private Information.

132.    By collecting and storing this data in its computer property, and sharing it, and using it for commercial gain, Defendant assumed a duty of care to use reasonable means to secure and safeguard their computer property—and Class Members' Private Information held within it— to prevent disclosure of the

information, and to safeguard the information from theft. Defendant's duty included a responsibility to implement processes by which it could detect a breach of their security systems in a reasonably expeditious period of time and to give prompt notice to those affected in the case of a Data Breach.

133.    Defendant owed a duty of care to Plaintiff and Class Members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that its systems and networks, and the personnel responsible for them, adequately protected the Private Information.

134.    Defendant had a duty to employ reasonable security measures under Section 5 of the FTC Act, 15 U.S.C. § 45, which prohibits "unfair ... practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

135.    Plaintiff and the Class are within the class of persons that the FTC Act was intended to protect.

136.    The harm that occurred as a result of the Data Breach is the type of harm the FTC Act was intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the Class.

137.    Defendant gathered and stored the Private Information of Plaintiff and Class Members as part of its business of soliciting its services to its clients and its clients' patients, which solicitations and services affect commerce.

138.    Defendant violated the FTC Act by failing to use reasonable measures to protect the Private Information of Plaintiff and Class Members and by not complying with applicable industry standards, as described herein.

139.    Defendant breached its duties to Plaintiff and Class Members under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and/or data security practices to safeguard Plaintiff' and Class Members' Private Information, and by failing to provide prompt notice without reasonable delay.

140.    Defendant's duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendant and those who received its services, which is recognized by laws and regulations, as well as common law.

141.    Defendant was in a position to ensure that its systems were sufficient to protect against the foreseeable risk of harm to Class Members from a Data Breach or data breach.

142.    Defendant's multiple failures to comply with applicable laws and regulations constitutes negligence *per se*.

143.    Defendant's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations, but also because Defendant is bound by industry standards to protect confidential Private Information.

144.    Defendant had full knowledge of the sensitivity of the Private Information, the types of harm that Plaintiff and Class Members could and would suffer if the Private Information was wrongfully disclosed, and the importance of adequate security.

145.    Plaintiff and Class Members were the foreseeable victims of any inadequate safety and security practices. Plaintiff and the Class members had no ability to protect their Private Information that was in Defendant's possession.

146.    Defendant was in a special relationship with Plaintiff and Class Members with respect to the hacked information because the aim of Defendant's data security measures was to benefit Plaintiff and Class Members by ensuring that their personal information would remain protected and secure. Only Defendant was in a position to ensure that its systems were sufficiently secure to protect Plaintiff' and Class Members' Private Information. The harm to Plaintiff and Class members from its exposure was highly foreseeable to Defendant.

147.    Defendant owed Plaintiff and Class Members a common law duty to use reasonable care to avoid causing foreseeable risk of harm to Plaintiff and the Class when obtaining, storing, using, and managing their Private Information, including taking action to reasonably safeguard such data and providing notification to Plaintiff

and the Class Members of any breach in a timely manner so that appropriate action could be taken to minimize losses.

148.    Defendant's duty extended to protecting Plaintiff and the Class from the risk of foreseeable criminal conduct of third parties, which has been recognized in situations where the actor's own conduct or misconduct exposes another to the risk or defeats protections put in place to guard against the risk, or where the parties are in a special relationship. *See* Restatement (Second) of Torts § 302B. Numerous courts and legislatures have also recognized the existence of a specific duty to reasonably safeguard personal information.

149.    Defendant had duties to protect and safeguard the Private Information of Plaintiff and the Class from being vulnerable to compromise by taking common-sense precautions when dealing with sensitive Private Information. Additional duties that Defendant owed Plaintiff and the Class include:

a.    To exercise reasonable care in designing, implementing, maintaining, monitoring, and testing Defendant's networks, systems, protocols, policies, procedures and practices to ensure that Plaintiff's and Class members' Private Information was adequately secured from impermissible release, disclosure, and publication;

b.    To protect Plaintiff's and Class Members' Private Information in its possession by using reasonable and adequate security procedures and systems; and

c. To promptly notify Plaintiff and Class Members of any breach, security incident, unauthorized disclosure, or intrusion that affected or may have affected their Private Information.

150.   Only Defendant was in a position to ensure that its systems and protocols were sufficient to protect the Private Information that had been entrusted to them.

151.   Defendant breached its duties of care by failing to adequately protect Plaintiff and Class Members' Private Information. Defendant breached its duties by, among other things:

a. Failing to exercise reasonable care in obtaining, retaining, securing, safeguarding, protecting, and deleting the Private Information in its possession;

b. Failing to protect the Private Information in its possession using reasonable and adequate security procedures and systems;

c. Failing to adequately and properly audit, test, and train its employees regarding how to properly and securely transmit and store Private Information;

d. Failing to adequately train its employees to not store unencrypted Private Information in their personal files longer than absolutely necessary for the specific purpose that it was sent or received;

e. Failing to consistently enforce security policies aimed at protecting Plaintiff and Class Members' Private Information;

f. Failing to mitigate the harm caused to Plaintiff and the Class Members;

g. Failing to implement processes to quickly detect data breaches, security incidents, or intrusions; and

      h.  Failing to promptly notify Plaintiff and Class Members of the Data Breach that affected their Private Information.

152.    Defendant's willful failure to abide by these duties was wrongful, reckless, and grossly negligent in light of the foreseeable risks and known threats.

153.    As a proximate and foreseeable result of Defendant's grossly negligent conduct,

Plaintiff and Class Members have suffered damages and are at imminent risk of additional

harms and damages (as alleged above).

154.    Through Defendant's acts and omissions described herein, including but not limited to Defendant's failure to protect the Private Information of Plaintiff and Class Members from being stolen and misused, Defendant unlawfully breached its duty to use reasonable care to adequately protect and secure the Private Information of Plaintiff and Class Members while it was within Defendant's possession and control.

155.    Further, through its failure to provide timely and clear notification of the Data Breach to Plaintiff and Class Members, Defendant prevented Plaintiff and Class Members from taking meaningful, proactive steps to securing their Private Information and mitigating damages.

156.    As a result of the Data Breach, Plaintiff and Class Members have spent time, effort, and money to mitigate the actual and potential impact of the Data Breach on their lives, including but not limited to, responding to the fraudulent use of the

Private Information, and closely reviewing and monitoring bank accounts, credit reports, and statements sent from providers and their insurance companies.

157.    Defendant's wrongful actions, inaction, and omissions constituted (and continue to constitute) common law negligence.

158.    The damages Plaintiff and the Class have suffered (as alleged above) and will suffer were and are the direct and proximate result of Defendant's grossly negligent conduct.

159.    Plaintiff and the Class have suffered injury and are entitled to actual damages in amounts to be proven at trial.

**Count II**
**BREACH OF IMPLIED CONTRACT**
**(On behalf of Plaintiff, the Nationwide Class and the California Subclass)**

160.    Plaintiff re-alleges and incorporates by reference the paragraphs above as if fully set forth herein.

161.    Plaintiff and Class Members were required to provide their PII and PHI to

Defendant as a condition of renting a vehicle.

162.    Plaintiff and Class Members provided their PII to Defendant or its third-party agents in exchange for Hertz's services. In exchange for the PII, Defendant promised to protect their PII from unauthorized disclosure.

163.    At all relevant times Defendant promulgated, adopted, and implemented written a Privacy Policy whereby it expressly promised Plaintiff and

Class Members that it would only disclose PII and/or PHI under certain circumstances, none of which relate to the Data Breach.

164. On information and belief, Defendant further promised to comply with industry standards and to make sure that Plaintiff' and Class Members' Private Information would remain protected.

165. Implicit in the agreement between Plaintiff and Class Members and the Defendant to provide Private Information, was the latter's obligation to: (a) use such Private

Information for business purposes only, (b) take reasonable steps to safeguard that Private

Information, (c) prevent unauthorized disclosures of the Private Information, (d) provide Plaintiff and Class Members with prompt and sufficient notice of any and all unauthorized access and/or theft of their Private Information, (e) reasonably safeguard and protect the Private Information of Plaintiff and Class Members from unauthorized disclosure or uses, (f) retain the Private Information only under conditions that kept such information secure and confidential.

166. When Plaintiff and Class Members provided their Private Information to Defendant as a condition of relationship, they entered into implied contracts with Defendant pursuant to which Defendant agreed to reasonably protect such information.

167. Defendant required Class Members to provide their Private Information as part of

Defendant's regular business practices.

168.    In entering into such implied contracts, Plaintiff and Class Members reasonably believed and expected that Defendant's data security practices complied with relevant laws and regulations and were consistent with industry standards.

169.    Plaintiff and Class Members would not have entrusted their Private Information to Defendant in the absence of the implied contract between them and Defendant to keep their information reasonably secure.  Plaintiff and Class Members would not have entrusted their Private Information to Defendant in the absence of its implied promise to monitor its computer systems and networks to ensure that it adopted reasonable data security measures.

170.    Plaintiff and Class Members fully and adequately performed their obligations under the implied contracts with Defendant.

171.    Defendant breached its implied contracts with Class Members by failing to safeguard and protect their Private Information.

172.    As a direct and proximate result of Defendant's breaches of the implied contracts,

Class Members sustained damages as alleged herein.

173.    Plaintiff and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

174.    Plaintiff and Class Members are also entitled to nominal damages for the breach of implied contract.

175.    Plaintiff and Class Members are also entitled to injunctive relief requiring

Defendant to, e.g., (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide adequate long term credit monitoring to all Class Members for a period longer than the grossly inadequate one-year currently offered.

**Count III**
**INVASION OF PRIVACY**
**(On behalf of Plaintiff, the Nationwide Class and the California Subclass)**

176.    Plaintiff re-alleges and incorporates by reference the paragraphs above as if fully set forth herein.

177.    Plaintiff and the Class Members have a legally protected privacy interest in their Private Information, which is and was collected, stored and maintained by Defendant, and they are entitled to the reasonable and adequate protection of their Private Information against foreseeable unauthorized access, as occurred with the Data Breach.

178.    Plaintiff and the Class Members reasonably expected that Defendant would protect and secure their Private Information from unauthorized parties and that their Private Information would not be accessed, exfiltrated, and disclosed to any unauthorized parties or for any improper purpose.

179.    The Defendant unlawfully invaded the privacy rights of Plaintiff and the Class Members by engaging in the conduct described above, including by failing to

protect their Private Information by permitting unauthorized third-parties to access, exfiltrate and view this Private Information. Likewise, Defendant further invaded the privacy rights of Plaintiff and Class Members, and permitted cybercriminals to invade the privacy rights of Plaintiff and Class Members, by unreasonably and intentionally delaying disclosure of the Data Breach, and failing to properly identify what Private Information had been accessed, exfiltrated, and viewed by unauthorized third-parties.

180.    This invasion of privacy resulted from Defendant's failure to properly secure and maintain Plaintiff and Class Members' Private Information, leading to the foreseeable unauthorized access, exfiltration, and disclosure of this unguarded data.

181.    Plaintiff and Class Members' Private Information is the type of sensitive, personal information that one normally expects will be protected from exposure by the very entity charged with safeguarding it. Further, the public has no legitimate concern in Plaintiff and Class Members' Private Information, and such information is otherwise protected from exposure to the public by various statutes, regulations and other laws.

182.    The disclosure of Plaintiff and Class Members' Private Information to unauthorized parties is substantial and unreasonable enough to be legally cognizable and is highly offensive to a reasonable person.

183.    Defendant's willful and reckless conduct which permitted unauthorized access, exfiltration and disclosure of Plaintiff and Class Members' Private

Information is such that it would cause serious mental injury, shame or humiliation to people of ordinary sensibilities.

184.    The unauthorized access, exfiltration, and disclosure of Plaintiff and Class Members' Private Information was without their consent, and in violation of various statutes, regulations and other laws.

185.    As a result of the invasion of privacy caused by Defendant, Plaintiff and Class Members suffered and will continue to suffer damages and injury as set forth herein.

186.    Plaintiff and Class Members seek all monetary and non-monetary relief allowed by law, including damages, punitive damages, restitution, injunctive relief, reasonable attorneys' fees and costs, and any other relief that is just and proper.

## Count IV
## VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW (CAL. BUS. & PROF. CODE §§ 17200, ET SEQ.)
### (On behalf of Plaintiff, the Nationwide Class and the California Subclass)

187.    Plaintiff re-alleges and incorporates by reference the paragraphs above as if fully set forth herein.

188.    Defendant engaged in deceptive, unfair, and unlawful trade acts or practices in the conduct of trade or commerce and furnishing of services, in violation of Cal. Bus. & Prof. Code §§17200, et. seq., including but not limited to the following:

(a) Defendant misrepresented material facts to Plaintiff, the Nationwide Class and California Class Members by representing that they would maintain adequate data privacy and security

practices and procedures to safeguard Plaintiff, the Nationwide Class and California Class members' Private Information and other data from unauthorized disclosure, release, data breaches, and theft;

(b) Defendant misrepresented material facts to Plaintiff, the Nationwide Class and California Class Members by representing that they did and would comply with the requirements of federal and state laws pertaining to the privacy and security of Plaintiff, the Nationwide Class and California Class Members' Private Information and other data;

(c) Defendant omitted, suppressed, and concealed material facts of the inadequacy of its privacy and security protections for Plaintiff, the Class and California Class Members' Private Information and other data;

(d) Defendant misrepresented material facts to Plaintiff, the Nationwide Class and California Class Members by representing that they would maintain adequate data privacy and security practices and procedures to safeguard Plaintiff, the Nationwide Class and California and Class Members' Private Information and other data from unauthorized disclosure, release, data breaches, and theft;

(e) Defendant misrepresented material facts to Plaintiff, the Nationwide Class and California Class Members by representing that they did and would comply with the requirements of federal and state laws pertaining to the privacy and security of Plaintiff, the Nationwide Class and California Class Members' Private Information and other data;

(f) Defendant omitted, suppressed, and concealed material facts of the inadequacy of its privacy and security protections for Plaintiff, the Nationwide Class and California Class Members' Private Information and other data;

(g) Defendant engaged in deceptive, unfair, and unlawful trade acts or practices by failing to maintain the privacy and security of Plaintiff, the Nationwide Class and California Class Members' Private Information and other data, in violation of duties imposed by and public policies reflected in applicable federal and state laws, resulting in the Data Breach. These unfair acts and practices violated duties imposed by laws including the Federal Trade Commission Act (15 U.S.C. § 45);

(h) Defendant engaged in deceptive, unfair, and unlawful trade acts or practices by failing to disclose the Data Breach to Plaintiff, the Nationwide Class and California Class Members in a timely and accurate manner, contrary to the duties imposed by various federal

and state statutes and regulations.

189.    Defendant's failure constitutes false and misleading representations, which have the capacity, tendency, and effect of deceiving or misleading consumers (including Plaintiff, the Nationwide Class and California Class Members) regarding the security of its network and aggregation of Private Information and other data.

190.    The misrepresentations upon which consumers (including Plaintiff, the Nationwide Class and California Class Members) relied were material misrepresentations (e.g., as to Defendant's adequate protection of Private Information and other data), and consumers (including Plaintiff, the Nationwide Class and California Class Members) relied on those representations to their detriment.

191.    Defendant's conduct is unconscionable, deceptive, and unfair, as it is likely to, and did, mislead consumers acting reasonably under the circumstances. As a direct and proximate result of Defendant's conduct, Plaintiff, the Nationwide Class and California Class Members have been harmed, in that they were not timely notified of the data breach, which resulted in profound vulnerability of their Private Information and other data.

192.    As a direct and proximate result of Defendant's unconscionable, unfair, and deceptive acts and omissions, Plaintiff, the Class and California Class Members' Private Information and other data were disclosed to third parties without authorization, causing and will continue to cause Plaintiff, the Nationwide Class and California and Class Members damages.

193.     As a direct and proximate result of Defendant's violation of Cal. Bus. & Prof. Code §§17200, et. seq., Plaintiff, the Nationwide Class and California and Class Members have suffered, and continue to suffer, injuries, damages arising from identify theft; from their needing to contact agencies administering benefits; potentially defending themselves from legal action base upon fraudulent applications for benefits made in their name; contacting their financial institutions; loss of use of funds; closing or modifying financial accounts; damages from lost time and effort to mitigate the actual and potential impact of the data breach on their lives; closely reviewing and monitoring their accounts for unauthorized activity which is certainly impending; placing credit freezes and credit alerts with credit reporting agencies; and damages from identify theft, which may take months or years to discover and detect.

194.     Plaintiff, the Nationwide Class and California Class Members seek all monetary and non-monetary relief allowed by law, including restitution of all profits stemming from Defendant's unfair, unlawful, and fraudulent business practices or use of their Private Information; declaratory relief; reasonable attorneys' fees and costs under California Code of Civil Procedure § 1021.5; injunctive relief; and other appropriate equitable relief.

195.     The above constitutes violation of Cal. Bus. & Prof. Code §§17200, et. seq.

**Count V**

**VIOLATION OF CALIFORNIA CUSTOMER RECORDS ACT (CAL. CIV. CODE § 1798.80, ET SEQ.)**
**(On behalf of Plaintiff, the Nationwide Class and the California Subclass)**

196.    Plaintiff re-alleges and incorporates by reference the paragraphs above as if fully set forth herein.

197.    Cal. Civ. Code §1798.81.5 requires that any business that "owns, licenses, or maintains Personal Information about a California resident shall implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the Personal Information from unauthorized access, destruction, use, modification, or disclosure."

198.    Defendant committed violations of Cal. Civ. Code §1798.81.5, including but not limited to by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems to safeguard and protect the Private Information and other data entrusted to it, including Plaintiff, the Nationwide Class and California Class Members' Private Information and other data as aforesaid.

199.    As a direct and proximate result of Defendant's violation of Cal. Civ. Code §1798.81.5, Plaintiff, the Nationwide Class and California and Class Members' Private Information and other data were disclosed to third parties without authorization, causing and will continue to cause Plaintiff, the Nationwide Class and California Class Members damages.

200.    As a direct and proximate result of Defendant's violation of Cal. Civ. Code §1798.81.5, Plaintiff, the Nationwide Class and California Class Members have suffered, and continue to suffer, injuries, damages arising from identify theft; from their needing to contact agencies administering benefits; potentially defending themselves from legal action base upon fraudulent applications for benefits made in their name; contacting their financial institutions; loss of use of funds; closing or modifying financial accounts; damages from lost time and effort to mitigate the actual and potential impact of the data breach on their lives; closely reviewing and monitoring their accounts for unauthorized activity which is certainly impending; placing credit freezes and credit alerts with credit reporting agencies; and damages from identify theft, which may take months or years to discover and detect.

201.    The above constitutes violation of Cal. Civ. Code §1798.81.5.

202.    Plaintiff, the Nationwide Class and California Class Members seek relief under Cal. Civ. Code § 1798.84, including actual damages and injunctive relief.

## Count VI
### VIOLATION OF CALIFORNIA CONSUMER PRIVACY ACT (CAL. CIV. CODE §§ 1798.150, *ET SEQ.* )
### (On behalf of Plaintiff, the Nationwide Class and the California Subclass)

203.    Plaintiff re-alleges and incorporates by reference the paragraphs above as if fully set forth herein.

204.    Defendant violated to California Consumer Privacy Act by failing to exercise reasonable care in safeguarding and protecting Plaintiff, the Nationwide Class and California Class Members' Private Information and other data by failing

to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems to safeguard and protect the Private Information and other data entrusted to it, including Plaintiff, the Nationwide Class and California Class Members' Private Information and other data as aforesaid. It was reasonably foreseeable to Defendant that its failure to exercise reasonable care in safeguarding and protecting Plaintiff, the Nationwide Class and California Class Members' Private Information and other data by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems would result in the unauthorized release, disclosure, and dissemination of Plaintiff, the Nationwide Class and California Class Members' Private Information and other data.

205.    As a direct and proximate result of Defendant's violation of Cal. Civ. Code §1798.150, et seq., Plaintiff, the Nationwide Class and California Class Members' Private Information and other data were disclosed to third parties without authorization, causing and will continue to cause Plaintiff, the Nationwide Class and California Class Members damages.

206.    As a direct and proximate result of Defendant's violation of Cal. Civ. Code §1798. 150, et seq., Plaintiff, the Nationwide Class and California Class Members have suffered, and continue to suffer, injuries, damages arising from identify theft; from their needing to contact agencies administering benefits; potentially defending themselves from legal action base upon fraudulent applications

for benefits made in their name; contacting their financial institutions; loss of use of funds; closing or modifying financial accounts; damages from lost time and effort to mitigate the actual and potential impact of the data breach on their lives; closely reviewing and monitoring their accounts for unauthorized activity which is certainly impending; placing credit freezes and credit alerts with credit reporting agencies; and damages from identify theft, which may take months or years to discover and detect.

207.   In accordance with Cal. Civ. Code § 1798.150(b), Plaintiff's counsel will serve Defendant with notice of these CCPA violations.

208.   On behalf of Plaintiff, the Nationwide Class and California Class Members, Plaintiff, the Nationwide Class and California Class Members seek injunctive relief in the form of an order enjoining Defendant from continuing to violate the CCPA. If Defendant fails to respond to Plaintiff's notice letter or agree to rectify the violations detailed above, Plaintiff will amend this Complaint and seek actual, punitive, and statutory damages, restitution, attorneys' fees and costs, and any other relief the Court deems proper as a result of Defendant's CCPA violations.

209.   Plaintiff, the Nationwide Class and California Class Members seek statutory damages of between $100 and $750 per customer per violation or actual damages, whichever is greater, as well as all monetary and non-monetary relief allowed by law, including actual financial losses; injunctive relief; and reasonable attorneys' fees and costs.

210.   The above constitutes violation of Cal. Civ. Code §1798.150, et. seq.

**Count VII**

**VIOLATION OF CALIFORNIA CONSUMER LEGAL REMEDIES ACT**
**(CAL. CIV. CODE §§ 1750, *ET SEQ.*)**
**(On behalf of Plaintiff, the Nationwide Class and the California Subclass)**

211.    Plaintiff re-alleges and incorporates by reference the paragraphs above as if fully set forth herein.

212.    Defendant's acts and practices were intended to and did result in the sales of products and services to Plaintiff, the Nationwide Class and California Class Members in violation of Civil Code § 1770, including:

    (a)   Representing that goods or services have characteristics that they do not have;

    (b)   Representing that goods or services are of a particular standard, quality, or grade when they were not;

    (c)   Advertising goods or services with intent not to sell them as advertised; and

    (d)   Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

213.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of its data security and ability to protect the confidentiality of consumers' Private Information and other data.

214.    As a direct and proximate result of Defendant's violation of Cal. Civ. Code §1750, et seq., Plaintiff, the Nationwide Class and California Class Members' Private Information and other data were disclosed to third parties without

authorization, causing and will continue to cause Plaintiff, the Nationwide Class and California Class Members damages.

215.    As a direct and proximate result of Defendant's violation of Cal. Civ. Code §1750, et seq., Plaintiff, the Nationwide Class and California and Class Members have suffered, and continue to suffer, injuries, damages arising from identify theft; from their needing to contact agencies administering benefits; potentially defending themselves from legal action base upon fraudulent applications for benefits made in their name; contacting their financial institutions; loss of use of funds; closing or modifying financial accounts; damages from lost time and effort to mitigate the actual and potential impact of the data breach on their lives; closely reviewing and monitoring their accounts for unauthorized activity which is certainly impending; placing credit freezes and credit alerts with credit reporting agencies; and damages from identify theft, which may take months or years to discover and detect.

216.    In accordance with Cal. Civ. Code § 1750, Plaintiff's counsel will serve Defendant with notice of these CLRA violations.

217.    On behalf of Plaintiff, the Nationwide Class and California Class Members, Plaintiff seeks injunctive relief in the form of an order enjoining Defendant from continuing to violate the CLRA. If Defendant fails to timely respond to Plaintiff's notice letter or agree to rectify the violations detailed above, Plaintiff will amend this Complaint and seek actual, punitive, and statutory damages, restitution, attorneys' fees and costs, and any other relief the Court deems proper as a result of Defendant's CLRA violations.

218.    Plaintiff, the Nationwide Class and California Class Members seek all monetary and non-monetary relief allowed by law, including damages, an order enjoining the acts and practices described above, attorneys' fees, and costs under the CLRA.

219.    The above constitutes violation of Cal. Civ. Code §1750, et. seq.

**Count VIII**
**UNJUST ENRICHMENT**
**(On behalf of Plaintiff, the Nationwide Class and the California Subclass)**

220.    Plaintiff re-alleges and incorporates by reference the paragraphs above as if fully set forth herein.

221.    Plaintiff and Class Members conferred a monetary benefit on Defendant in the form of the provision of their Private Information and Defendant would be unable to engage in its regular course of business without that Private Information.

222.    Defendant appreciated that a monetary benefit was being conferred upon it by Plaintiff and Class Members and accepted that monetary benefit.

223.    However, acceptance of the benefit under the facts and circumstances outlined above make it inequitable for Defendant to retain that benefit without payment of the value thereof.  Specifically, Defendant enriched itself by saving the costs it reasonably should have expended on data security measures to secure Plaintiff' and Class Members' Personal Information.  Instead of providing a reasonable level of security that would have prevented the Data Breach, Defendant instead calculated to increase its own profits at the expense of Plaintiff and Class

Members by utilizing cheaper, ineffective security measures. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Defendant's decision to prioritize its own profits over the requisite data security.

224. Under the principles of equity and good conscience, Defendant should not be permitted to retain the monetary benefit belonging to Plaintiff and Class Members, because Defendant failed to implement appropriate data management and security measures.

225. Defendant acquired the Private Information through inequitable means in that it failed to disclose the inadequate security practices previously alleged. If Plaintiff and Class Members knew that Defendant had not secured their Private Information, they would not have agreed to provide their Private Information to Defendant.

226. Plaintiff and Class Members have no adequate remedy at law. As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered or will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity how their Private Information is used; (iii) the compromise, publication, and/or theft of their Private Information; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their Private Information; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest,

and recover from identity theft; (vi) the continued risk to their Private Information, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect Private Information in their continued possession; and (vii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Private Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

227.     As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm.

228.     Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, proceeds that they unjustly received from them.

**Count IX**
**Declaratory Judgment**
**(On behalf of Plaintiff, the Nationwide Class and the California Subclass)**

229.     Plaintiff re-alleges and incorporates by reference the paragraphs above as if fully set forth herein.

230.     Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, et seq., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority

to restrain acts, such as here, that are tortious and violate the terms of the federal and state statutes described in this Complaint.

231.    An actual controversy has arisen in the wake of Defendant's data breach regarding its present and prospective common law and other duties to reasonably safeguard its customers' Private Information and whether Defendant is currently maintaining data security measures adequate to protect Plaintiff and Class members from further data breaches that compromise their Private Information.

232.    Plaintiff alleges that Defendant's data security measures remain inadequate. Plaintiff will continue to suffer injury as a result of the compromise of their Private Information and remain at imminent risk that further compromises of their Private Information will occur in the future.

233.    Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

> a. Hertz continues to owe a legal duty to secure consumers' Private Information and to timely notify consumers of a data breach under the common law, Section 5 of the FTC Act, and various state statutes;
> b. Hertz continues to breach this legal duty by failing to employ reasonable measures to secure consumers' Private Information.

234.    The Court also should issue corresponding prospective injunctive relief requiring Hertz to employ adequate security protocols consistent with law and industry standards to protect consumers' Private Information.

235.    If an injunction is not issued, Plaintiff and Class members will suffer irreparable injury, and lack an adequate legal remedy, in the event of another data breach at Hertz. The risk of another such breach is real, immediate, and substantial. If another breach at Hertz occurs, Plaintiff and Class members will not have an adequate remedy at law because many of the resulting injuries are not readily quantified and they will be forced to bring multiple lawsuits to rectify the same conduct.

236.    The hardship to Plaintiff and Class members if an injunction does not issue exceeds the hardship to Hertz if an injunction is issued. Among other things, if another massive data breach occurs at Hertz or Cleo, Plaintiff and Class members will likely be subjected to fraud, identify theft, and other harms described herein. On the other hand, the cost to Hertz of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and Hertz has a pre-existing legal obligation to employ such measures. Issuance of the requested injunction will not do a disservice to the public interest.

237.    To the contrary, such an injunction would benefit the public by preventing another data breach at Hertz, thus eliminating the additional injuries that would result to Plaintiff and the millions of consumers whose Private Information would be further compromised.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff pray for judgment as follows:

A.  For an Order certifying this action as a class action and appointing Plaintiff and her counsel to represent the Class;

B.  For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff and Class Members' Private Information, and from refusing to issue prompt, complete and accurate disclosures of its Data Breach to Plaintiff and Class Members;

C.  For equitable relief compelling Defendant to utilize appropriate methods and policies with respect to consumer data collection, storage, and safety, and to disclose with specificity the type of Private Information compromised during the
Data Breach;

D.  For equitable relief requiring restitution and disgorgement of the revenues wrongfully retained as a result of Defendant's wrongful conduct;

E.  For declaratory relief as requested;

F.  Ordering Defendant to pay for lifetime credit monitoring services for Plaintiff and the Class;

G.  For an award of actual damages, compensatory damages, and statutory damages, in an amount to be determined, as allowable by law;

H.  For an award of attorneys' fees and costs, and any other expense, including expert witness fees;

I.  Pre- and post-judgment interest on any amounts awarded; and

J.  Such other and further relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all claims so triable.


Dated:  April 18, 2025

Respectfully submitted,

By: */s/ Joshua H. Eggnatz*
Joshua H. Eggnatz, Esq.
Fla. Bar No.: 0067926
Michael J. Pascucci, Esq.
Fla. Bar No.: 0083397
**EGGNATZ | PASCUCCI**
7450 Griffin Rd, Ste. 230
Davie, FL 33314
Telephone: (954) 889-3359
Facsimile: (954) 889-5913
Email: JEggnatz@JusticeEarned.com
Email: Mpascucci@JusticeEarned.com

*Local Counsel for Plaintiff*


**KANTROWITZ, GOLDHAMER & GRAIFMAN, P.C.**
Melissa R. Emert*
Gary S. Graifman*

135 Chestnut Ridge Road, Suite 200
Montvale, NJ 07645
Telephone: (201) 391-7000
Facsimile: (201) 307-1086
Email: <u>memert@Kgglaw.com</u>
Email: <u>ggraifman@kgglaw.com</u>

(*Pro hac vice application forthcoming)


*Lead Counsel for Plaintiff and the Class*